At the beginning of the term the judges requested the members of the bar to investigate the subject and give their opinions and their reasons for them pro or con, on this question: Has the Court jurisdiction to issue a writ of habeas corpus, returnable to the Court, and thereupon to inquire of the lawfulness of any restraint put on the liberty of a citizen? We have been favored with the opinions of Messrs. Moore and Winston in favor of the jurisdiction, and of Mr. Strong against it, and the subject has been fully discussed. After giving it due consideration, we are of opinion that the Court has jurisdiction. This conclusion is put on two grounds: *Page 15 
1. The Court has jurisdiction by common law. The laws of our State rest for a foundation upon the common law of England. It is an admitted principle of the common law that every court of record of superior jurisdiction has power to issue the writ of habeas corpus, which is the great right for the protection of the liberties of the citizen. This "power is an incident to every superior court of record." 3 Wilson, 172; 3 Bac. Abr., title Habeas Corpus; notes. It arises from the obligation of the king to protect all of his subjects in the enjoyment of their right of personal liberty, and for this purpose to inquire by his courts into the condition of any of his subjects. As this duty of the king in regard to any of his subjects confers on every court of record of superior jurisdiction the power to issue the writ, as incident to its existence, it follows that the duty of the State of North Carolina in regard to its (43) citizens must confer a like power on all of its courts of record of superior jurisdiction, as incident to their existence; for surely, under our Constitution and Bill of Rights, in which is reiterated the great principle of Magna Carta, "every free man restrained of his liberty is entitled to a remedy to inquire into the lawfulness thereof, and to remove the same if unlawful, and such remedy ought not to be denied or delayed," the personal liberty of our citizens must be equally as well protected and secured as the personal liberty of the subjects of the King of England.
Our Constitution vests the legislative power in a General Assembly; the executive power in a Governor, and the supreme judicial power in a Supreme Court; so that the establishment of a Supreme Court, without any words to that effect, necessarily and as an incident to its existence, by force of the Bill of Rights, of the Constitution, and the principles of the common law, invests it with power to inquire by means of this great Writ of Right into the lawfulness of any restraint upon the liberty of a free man, and if in establishing a Supreme Court the Legislature had in express terms denied the Court the power to issue this writ and prohibited it from so doing, such prohibition would have been void and of no effect.
Our conclusion that the Supreme Court has power to issue the writ is confirmed by a consideration of the provisions of the Habeas Corpus Act, Rev. Code, ch. 55. It is taken from two English statutes, 31 Charles II. and 56 George III. We have seen that all of the Superior Courts of England had power by the common law to issue the writ, but the courts could only act in term-time, and a free man might be unlawfully imprisoned in vacation time, so the remedy would be delayed; and to provide the means of speedy inquiry into the cause of imprisonment, it is enacted by 31 Charles II. that every judge of all the courts of *Page 16 
superior jurisdiction, on the application of any person imprisoned upon a criminal charge (unless after conviction), shall in the vacation time, under a penalty of £ 500, grant a writ of habeas corpus, (44) returnable without delay; and by 56 George III. it is enacted that all of the judges shall, in vacation time, under a like penalty, in the same manner grant the writ on the application of any person in person or restrained of his liberty for any cause other than a criminal charge. So in England any person, whether imprisoned on a criminal charge or restrained of his liberty for any other cause, had a right during the sitting of the courts, by application to the court, and during the vacation by application to any one of the judges, to have the cause of his being imprisoned or restrained of his liberty inquired into without delay.
Our Habeas Corpus Act, as before observed, is taken from these two English statutes, and not only gives power to, but requires, under a penalty of $2,500, any judge of the Supreme or Superior Court in thevacation time to issue the writ of habeas corpus on the application of any person imprisoned on a criminal charge or otherwise restrained of his liberty.
It is manifest that this act presupposes that both the Supreme and the Superior Courts had power in term-time to issue the writ, and the intention was to extend the remedy to the vacation. This must be a declaration by the Legislature of the fact that both the Supreme and the Superior Courts had power to issue the writ, or we must adopt the absurdity that the Legislature intended to give to a single judge in vacation a power which the Court did not possess in term-time, and we can only account for the fact that while giving this power to the judges in vacation, the Legislature did not in express words confer a like power on the courts, upon the ground that it was taken for granted that our courts, like those in England, already had the power; for under the unrestricted legislative power of the General Assembly it not only had the power, but it was its duty by the Constitution and Bill of Rights to confer this power on both the Supreme and Superior Courts, if the courts did not already possess it.
2. Suppose, for the sake of argument, it was necessary that the power should be conferred on the Supreme Court by statute: we are of (45) opinion that it is conferred by the act establishing the Court. Rev. Code, ch. 33, sec. 6. It is in these words: "The courts shall have power to hear and determine all questions of law brought before it by appeal or otherwise from a superior court of law, and to hear and determine all cases in equity brought before it by appeal or removal from a court of equity, and shall have original and exclusive jurisdiction in repealing letters patent, and shall also have power to issue writs *Page 17 
of certiorari, scire facias, habeas corpus, mandamus, and all other writs which may be proper and necessary for the exercise of its jurisdiction and agreeable to the principles and usages of law."
There are several kinds of writs of habeas corpus: inferior ones, to enable the Court to exercise its jurisdiction, for instance, adtestificandum — to bring a man out of jail to be a witness; and the great Writ of Right, habeas corpus, to bring any citizen alleged to be wrongfully imprisoned or restrained of his liberty before the Court, with the cause of his arrest and detention, that the matter may be inquired of and the party set at liberty, if imprisoned against law. This proceeding is original, and in no wise connected with or dependent on any other matter over which the Court has jurisdiction.
The question is: Does the act restrict the power of the Court to writs of the inferior sort, or does it confer power to issue the great Writ of Right?
In support of the first construction, it is urged that the words, "allother writs which may be proper and necessary for the exercise of its jurisdiction," show that the writs before specified were intended to be of the same kind, and must have the effect of restricting the power of writs of the inferior sort. Several considerations are urged in reply: In strict grammatical construction, the restrictive words, "which may be proper and necessary for the exercise of its jurisdiction," refer to the last antecedent, "all other writs," so as to make the true reading (supplying the ellipsis), "and shall also have power to issue all other writs which may be proper and necessary for the exercise of its jurisdiction." (46) This further reply is made: If the intention was merely to give power to issue the inferior writs necessary to the exercise of its jurisdiction (which power every court in fact has, by implication), it was sufficient to say, "and the Court may issue all such writs as may be necessary for the exercise of its jurisdiction." Instead of this simple clause immediately following the grant of original jurisdiction to repeal letters patent, comes this formal announcement: "and shall also have power to issue writs of certiorari, scire facias, habeas corpus, mandamus." Why this formal announcement of substantive grant of power? And why are there four writs particularly named, if the object was merely to authorize the Court to issue the inferior sort of writs?
In questions of this kind, the Court is not confined to the narrow field of the import of words, construction of sentences and rules of grammar, but may draw to its aid considerations of a more comprehensive nature, and if due weight is given to the power of the Legislature — its duty, the object in view and the nature of the subject — the conclusion is irresistible that it was the intention to give the Court power to issue the great "Writ of Right." *Page 18 
The power of the Legislature in respect to the jurisdiction it was about to confer on the Supreme Court then to be established was unlimited — it had the same power to confer original as appellate jurisdiction.
It was the duty of the Legislature, under the Bill of Rights and the Constitution, to provide in the most ample manner for the protection of the liberty of "all free men." The object in establishing a Supreme Court was to provide the tribunal best calculated to secure uniformity and correctness of decision in respect to all questions involving "rights of persons" and "rights of things." This it was supposed could be accomplished by a court composed of three judges. From the nature of the subject, in actions at law and indictments where the facts must be tried by a jury, it was seen to be impracticable for the Supreme Court (47) to exercise original jurisdiction. Hence, it was deemed expedient that all actions and indictments should originate in the lower courts, where the facts can be found, so as to present to the Supreme Court only questions of law by way of appeal. In suits in equity where, although the facts are sometimes complicated, the mode of trial is by the court, it was deemed expedient that the proceedings should originate below and then be brought up by appeal or removal after being set for hearing. So, in respect to these remedies, only appellate jurisdiction is conferred.
There remained a fourth distinct and important subject of jurisdiction, to wit, the writ of habeas corpus. From its nature no complicated state of facts can be presented, so that consideration presented no objection to the grant of original jurisdiction to the Supreme Court. While, on the other hand, as all of the judges of the Supreme and Superior Courts had power to issue such writs and decide upon the lawfulness of the imprisonment, in order to prevent conflict of decision and utter confusion and chaos, and to give uniformity and correctness to decisions involving the liberty of the citizen, the necessity of conferring original jurisdiction on the Supreme Court to issue the writ and decide on the right was patent; and, if the statute in question does not confer the power, no reason can be assigned for the omission, unless it was the opinion of the Legislature that the power would attach to the Court as soon as it was established, as an incident of its existence, upon the principles of the common law and Bill of Rights.
The Legislature had full power. It was its duty; there was a patent necessity; the object in establishing the Supreme Court could not otherwise be fulfilled, and no objection to it could be suggested. It follows that the Court has the power, either on the ground that the statute confers it or the omission to do so is a legislative declaration that the Court possesses the power as incident to its existence. *Page 19 
On the able argument with which we have been favored by Mr. Strong, he called attention to the fact that the act of Congress, 1789, establishing the Supreme Court of the United States, used nearly the (48) same language as the act of the Legislature establishing the Supreme Court of this State, and that in the construction of the act of Congress the Supreme Court of the United States have decided that the Court cannot issue the writ of habeas corpus except where the writ is incident to an appellate jurisdiction.
That is true, and it seems to account for the general impression which has prevailed in this State against the power of the Court. The fact that so many applications have been made to the judges for writs of habeascorpus during the last few months has directed attention to this subject; and a closer and more serious investigation than the subject had before received results in the conclusion that the Court had the power, and that the erroneous impression which had prevailed is to be ascribed to the circumstance that due weight had not been given to the difference between the two courts in regard to the sources from which jurisdiction may be derived. The Supreme Court of the United States can derive no jurisdiction from the principles of the common law. Its jurisdiction must rest solely on acts of Congress, and the power of Congress to confer jurisdiction rests on the Constitution of the United States. It can have no power except that which is conferred by the Constitution, and by it the power to establish a Supreme Court is restricted to a court of appellate jurisdiction, except in cases affecting ambassadors, etc. Art. III, sec. 2.
The very reverse of all this is the case in respect to the Supreme Court of the State. It may derive its jurisdiction from the principles of the common law. The power of the Legislature to confer jurisdiction is unlimited, and there is no reason why it should not, if deemed expedient, have established a Supreme Court with full original jurisdiction, or one with jurisdiction partly original and partly appellate.
In the opinion of Judge Marshall, Ex parte Bollman, 4 Cranch., 98, 2 Curtis, 24, a full and critical examination is made of the act of Congress, and he comes to the conclusion that by its true construction it would confer on the Supreme Court jurisdiction to issue the (49) writ of habeas corpus, but for the fact that it was to be construed in reference to the limited power of Congress. Our act, on the contrary, is to be construed in reference to the unlimited power of the Legislature, and in this view the opinion of Judge Marshall strongly supports the conclusion to which we have arrived.
Mr. Strong also cited Jones v. McLaurin, 52 N.C. 392. That was a scirefacias against bail, and the Court decide that it has not jurisdiction, because the scire facias as there used is, in effect, an action of debt, in *Page 20 
respect to which the Court has only appellate jurisdiction. The question we have before us is plainly distinguishable. The habeas corpus is totally distinct in its nature from any action at law, or proceeding in the nature of an action or suit in equity, or indictment, and is put by us on grounds peculiar to itself.
Our conclusion is that the Court has power to issue writs of habeascorpus, returnable to the Court, and thereupon to inquire of and decide upon the lawfulness of any restraint put on the liberty of a citizen. This opinion does not effect the question of the jurisdiction of a State court where the arrest is justified on the authority or by color of an act of the Congress of the Confederate States. That question may be the subject of future consideration.
Afterwards, the cause was taken up on its merits.